**In the United States District Court
for the District of Kansas**

---

Case No. 24-cv-4087-TC-BGS

---

PROGRESSIVE NORTHWESTERN INSURANCE COMPANY,

*Plaintiff*

v.

JOHN R. EDWARDS, ET AL.,

*Defendants*

---

**MEMORANDUM AND ORDER**

Plaintiff Progressive Northwestern Insurance Company sued its insureds, John and Carlene Edwards, seeking declaratory judgment as to its obligation under an insurance policy it issued to the Edwards. Doc. 1. Both sides move for summary judgment. Docs. 15 & 20. For the following reasons, Progressive's motion is granted and the Edwards' motion is denied.

**I**

**A**

Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency that Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

The filing of cross-motions for summary judgment does not alter this standard. Each motion—and its material facts—must "be treated separately," meaning that "the denial of one does not require the grant of another." *Atl. Richfield Co. v. Farm Credit Bank Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). All inferences must be construed "in favor of the party against whom the motion under consideration is made." *United States v. Dep't of Health & Env't*, 162 F.4th 1238, 1247 (10th Cir. 2025).

**B**

The material facts are not in dispute. In October 2023, the Edwards were in a car accident in Mitchell County, Kansas. Doc. 16 at ¶ 4.[1] Another driver, Eric Nitch, crashed into the Edwards' car. *Id.* Nitch's negligence caused the accident. *Id.* at ¶ 5. Mr. Edwards suffered roughly $261,000 in damages and Mrs. Edwards roughly $5.3 million. *Id.* Nitch had an automobile insurance policy with a $250,000 limit. *Id.* at ¶ 6. The Edwards filed a claim against Nitch's insurance and

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF. All facts are uncontroverted unless otherwise specified.

received $250,000. Doc. 16 at ¶¶ 7, 8. They apportioned $50,000 to Mrs. Edwards and $200,000 to Mr. Edwards. *Id.* at ¶ 9.

Mr. Edwards had an automobile insurance policy with Progressive. Doc. 16 at ¶ 1. That policy covered both Mr. and Mrs. Edwards. *Id.* at ¶¶ 11, 12. It had underinsured motorist (UIM) coverage with a $300,000 "combined single limit each accident." *Id.* at ¶ 3. It also had a section that reduced any UIM recovery by any amount recovered from the tortfeasor's insurance. *Id.* at ¶ 15. That section stated as follows:

> The limits of liability under this Part [ ] will be reduced by all sums paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible and are owners or operators of an uninsured motor vehicle or an underinsured motor vehicle.

*Id.* (emphasis omitted).

Mr. Edwards filed a claim for UIM benefits with Progressive. Doc. 16 at ¶ 16. He requested $300,000, the limit of the policy. Doc. 19 at 3. Progressive denied that claim, arguing that Mr. Edwards is not entitled to the $300,000 policy limit but, rather, to $50,000. Doc. 16 at ¶ 16. Progressive relies on the policy's language that reduces UIM coverage by any amount recovered from the tortfeasor's insurance: In this case the Edwards' $300,000 coverage is reduced by their $250,000 recovery from Nitch's insurance. *Id.*

The Edwards do not dispute that the policy calls for their UIM benefits to be reduced by the amount they recovered from Nitch. *See* Doc. 19 at 2. But they argue that K.S.A. § 40-284(b), as interpreted by the Kansas Supreme Court, overrides the policy's language and sets out that Progressive must pay them collectively the entire $300,000 limit of the policy. Doc. 19 at 5–6. Section 40-284(b) reads as follows:

> Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage *to the extent*

3

> *such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle.*

Kan. Stat. Ann. § 40-284(b) (emphasis added).

Progressive filed suit seeking declaratory judgment as to its obligation under the policy. Doc. 1. Both sides move for summary judgment. Docs. 15 & 20.

## II

The UIM policy language, consistent with K.S.A. § 40-284(b), reduces the Edwards' recovery by the amount they received from Nitch. Accordingly, Progressive's motion is granted and the Edwards' motion is denied.

The Edwards argue that K.S.A. § 40-284(b) requires Progressive to pay them the entire $300,000 limit of their policy. Doc. 19 at 3. In other words, the Edwards argue that Progressive owes them the full UIM benefit without regard to what they recovered from Nitch. That argument is foreclosed by the Kansas Supreme Court's opinion in *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 66 P.3d 822 (Kan. 2003).[2]

The Kansas Supreme Court interpreted Section 40-284(b) in *O'Donoghue*. In that case, the plaintiff O'Donoghue was killed in a car accident. *O'Donoghue*, 66 P.3d at 825. The tortfeasor's insurance carried bodily injury limits of $50,000 per person and $100,000 per occurrence, meaning that it would not pay any one person more than $50,000 and would not pay more than $100,000 to compensate all persons injured. *Id.* After O'Donoghue's estate recovered $25,000 from the tortfeasor, it turned to O'Donoghue's own insurance company, Farm Bureau.

---

[2] A federal court sitting in diversity must "apply the substantive law of the forum state." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). That law arises from state statutes and decisions of the state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, decisions of the Kansas Supreme Court govern the legal analysis. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (citing *High Plains Nat. Gas Co. v. Warren Petroleum Co.*, 875 F.2d 284, 288 (10th Cir. 1989)). If the law is ambiguous, a federal district court must look to the Kansas Supreme Court's rulings, "and if no such rulings exist, [it] must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006)).

Specifically, to O'Donoghue's UIM benefits to obtain the difference between O'Donoghue's UIM policy limit ($100,000) and the amount recovered from the tortfeasor. *Id.*

Farm Bureau denied the claim. *O'Donoghue*, 66 P.3d at 825. It argued that O'Donoghue's recovery was capped at $50,000, "computed by subtracting [the tortfeasor's] per person limit of $50,000 from O'Donoghue's per person limit of $100,000." *Id.* The estate filed suit, and the Kansas Supreme Court granted review to decide whether "O'Donoghue is entitled to recover from Farm Bureau UIM benefits of $75,000 or whether she is limited to the difference between her UIM limit of $100,000 and [the tortfeasor's] liability limit of $50,000." *Id.*

The Kansas Supreme Court affirmed the Kansas Court of Appeals' holding in favor of O'Donoghue. *O'Donoghue*, 66 P.3d at 830. In reaching its holding, the Kansas Supreme Court explained that K.S.A. § 40-284(b) provides for a coverage-to-coverage comparison when determining the amount of UIM coverage. *Id.* at 827. The court held that "Farm Bureau is responsible for paying O'Donoghue $75,000; that is, the difference between O'Donoghue's pro rata share of the settlement from the tortfeasor ($25,000) and her total amount of damages up to her UIM limits ($100,000)." *Id.*; *accord id.* at Syl. ¶ 6 (providing that the statute requires paying "the difference between the insured's pro rata share of the settlement with the tortfeasor and the insured's total amount of damages *up to the insured's underinsured motorist limit*") (emphasis added).

Applying *O'Donoghue* to the instant case dictates that the Edwards can only recover $50,000.[3] That is, they can recover the difference between their recovery from Nitch ($250,000) and their total damages up to their UIM combined limit ($300,000).

The Edwards argue that *O'Donoghue*'s holding—that Farm Bureau owed O'Donoghue $75,000, the difference between her recovery from the tortfeasor ($25,000) and her total amount of damages up to her UIM limits ($100,000)—means that they are entitled to their policy's full $300,000. Doc. 19 at 11. They read *O'Donoghue* as calling for a calculus that starts with actual damages, reduces that sum by any amount

---

[3] Because the Edwards' motion for summary judgment fails, their request for attorney fees also fails. *See* Doc. 19 at 11 (requesting attorney fees under K.S.A. § 40-908).

5

recovered from the tortfeasor, and pays the difference to the insured up to the UIM limits. *Id.* In other words, because their damages minus their recovery from Nitch is roughly $5.1 million, and that sum "greatly exceed[s]" their $300,000 limit, they are entitled to recover $300,000. *Id.*

This argument misreads *O'Donoghue*. An insured can recover her total damages only insofar as those damages are less than her UIM limit minus her recovery from the tortfeasor. *O'Donoghue*, 66 P.3d at 830. *O'Donoghue* does not stand for the proposition that an insured can collect her entire UIM limit if her total damages minus her recovery from the tortfeasor is greater than her UIM limit. *Contra* Doc. 19 at 11. If the Edwards' contention were correct, they would recover a total of $550,000, which comprises $250,000 from Nitch and $300,000 from Progressive. But the Kansas Supreme Court explicitly rejected this reading of Section 40-284(b). *See O'Donoghue*, 66 P.3d at 827 (quoting *O'Donoghue v. Farm Bureau Mut. Ins. Co.*, 49 P.3d 22, 27 (Kan. Ct. App. 2002)) (noting that Section 40-284(b) "qualifies the UIM recovery" and does not permit recovery of the full UIM limit in addition to what was recovered from the tortfeasor).

The Edwards' contention is also contrary to Section 40-284(b). That provision "directs that insurance companies are to provide a UIM coverage which enables the insured to collect from his or her own insurance company the amount of money that the insured would have recovered from the tortfeasor, if the tortfeasor had been carrying the same liability limits as the insured." *O'Donoghue*, 66 P.3d at 827 (quoting *O'Donoghue*, 49 P.3d at 27). If Nitch's policy had had a limit of $300,000 (the same as the Edwards' UIM limit) then the Edwards would have recovered $300,000 from Nitch. This means their UIM policy is meant to enable the Edwards to collect a total of $300,000.

The Kansas Court of Appeals' opinion in *E.H. by & through Hemenway v. Auto. Club Inter-insurance Exch.*, 447 P.3d 382 (Kan. Ct. App. 2019), confirms this result. In *E.H.*, the court was faced with determining the amount of UIM coverage. *E.H.*, 447 P.3d at 385. It noted that courts are "required to deduct from the available UIM coverage amounts awarded by the tortfeasor." *Id.* at 390. Using "the *O'Donoghue* rule of subtracting the amount a claimant receives from the tortfeasor from the total amount of per person UIM coverage available" led the court to a recovery amount of $35,000, which was the $100,000 UIM limit minus the plaintiffs' recovery of $65,000. *Id.*

6

* * *

*O'Donoghue* and *E.H.* show that UIM coverage ensures that the Edwards receive $300,000 either wholly from Nitch, wholly from Progressive, or combining their recovery from both. Those cases control the result in this case, and they limit the Edwards' recovery to $50,000.

### III

For the foregoing reasons, Progressive's Motion for Summary Judgment, Doc. 15, is GRANTED, and the Edwards' Motion for Summary Judgment, Doc. 20, is DENIED.

It is so ordered.

Date: February 27, 2026         s/ Toby Crouse
                                Toby Crouse
                                United States District Judge